UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

VINCENT CHAMBERS,

                        Petitioner,

          - against -

JAMES T. CONWAY, Superintendent of
Attica Correctional Facility, et
al.,

                        Respondent.
────────────────────────────────

09 Civ. 2175 (JGK)

MEMORANDUM OPINION AND
            ORDER

JOHN G. KOELTL, District Judge:

     The petitioner, Vincent Chambers, brings this pro se

petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254.  On September 17, 2001, the petitioner was convicted after

a jury trial in New York State Supreme Court, Bronx County, of

Manslaughter in the First Degree (N.Y. Penal Law § 125.20[1]).

The petitioner was sentenced as a persistent felony offender to

an indeterminate prison term of twenty-five years to life.

     The petitioner appealed to the New York State Supreme

Court, Appellate Division, First Department, which, on May 13,

2003, unanimously affirmed the petitioner's judgment of

conviction.  People v. Chambers, 758 N.Y.S.2d 799 (App. Div.

2003).  The petitioner's application for leave to appeal to the

New York State Court of Appeals was denied on July 11, 2003.

People v. Chambers, 796 N.E.2d 481 (N.Y. 2003).

The petitioner subsequently moved in the New York State
Supreme Court, Bronx County, to vacate his sentence pursuant to
New York Criminal Procedure Law § 440.20.  The court vacated the
petitioner's sentence and ordered a re-sentencing hearing.
After holding a re-sentencing hearing, the court re-sentenced
the petitioner as a mandatory persistent violent felony offender
pursuant to New York Penal Law § 70.08 and New York Criminal
Procedure Law § 400.16 to an indeterminate prison term of
twenty-five years to life.  (See Killian Decl. Exs. 12-15.)

The petitioner brought several additional collateral
challenges in state court to his conviction and sentence.  Each
of these challenges is detailed below and was unsuccessful.

In his petition for habeas corpus in this case, the
petitioner challenges his conviction on multiple grounds.
First, the petitioner alleges judicial and prosecutorial
misconduct with respect to a videotaped statement by the
petitioner that was allegedly suppressed at the grand jury
proceedings and at trial, and with respect to a witness that he
alleges was improperly recalled to the stand and allowed to
offer "false testimony."  The petitioner also alleges
prosecutorial misconduct based on the prosecutor allegedly
"forcing" witnesses to testify through harassment and coercion,
and making an "inflammatory" remark that "assassinated" the
petitioner's character while he was on the stand.  Next, the

petitioner claims that he received ineffective assistance of trial counsel because trial counsel engaged in sidebar discussions outside of his presence and trial counsel failed to challenge the constitutionality of his original sentencing proceedings.  The petitioner also claims that the grand jury proceeding was defective because the petitioner's videotaped statement was suppressed and therefore there was insufficient evidence to support the indictment, and the indictment improperly charged the petitioner with depraved indifference murder.  Finally, the petitioner claims that his sentence as a persistent violent felony offender is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000).  The petitioner moves for an evidentiary hearing on all of his claims.

I.

A.

The record reflects the following relevant facts.  On May 14, 2000, the petitioner was riding his bike and stopped to talk to some "associates" outside 15 Marcy Place in the Bronx.  (Tr. 399.)  While he was talking with his associates, Jafaar Booker, the victim, who the petitioner believed to be a gang member, attempted to speak to the petitioner.  (Tr. 399-400, 402-03.) The petitioner asked Booker not to "say two words to [him]," after which the petitioner claims that Booker walked towards the

petitioner and told him to get off of his bike.  (Tr. 403.)
According to the petitioner, as he was getting off his bike,
Booker grabbed the petitioner's twenty-inch chain with a
religious medal and took it from the petitioner.  (Tr. 403.)  At
this point, the petitioner and Booker began to fight with one
another, "tussling" and "wrestling."  (Tr. 404, 406.)

   According to witnesses, in the course of the fight, the
petitioner pulled out a knife.  (Tr. 124, 317.)  Booker ran from
the petitioner and when the petitioner chased him Booker and two
other men allegedly pinned the petitioner down on a car and
attempted to take the knife from him.  The petitioner claims
that Booker beat him with a black metal cane and bit him in the
face.  (Tr. 406, 409).  An eye-witness corroborated that Booker
hit the petitioner twice in the head with the cane. (Tr. 316-17,
333-34, 351.)  According to witnesses, however, Booker appeared
to be using the cane to protect himself from the petitioner, who
had broken free of the men holding him down on the car and was
pursuing Booker with the knife.  (Tr. 126, 316-317.)  Raphael
Vasquez, an eye-witness, heard Booker tell the petitioner that
he would put down the cane if the petitioner put down the knife.
(Tr. 317-19.)  Vasquez testified that the petitioner responded
by saying "Fuck that, I'm going to do what I got to do," and
then ran at Booker, pushing him up against a gate and stabbing
him in the chest.  (Tr. 317-19, 351, 375-76.)  The petitioner

wiped off the knife, put it in his pocket, and began to ride his
bike away from the scene.  (Tr. 199, 319-20.)  As he was riding
his bike, the petitioner took off his shirt and threw it on the
sidewalk.  (Tr. 125, 135-36.)

After being stabbed, Booker ran towards Jerome Avenue,
where a police precinct and fire department were located,
holding his hand over his bleeding chest.  (Tr. 135, 168-69,
219-20, 241.)  Booker approached Police Officer David McNamee
who was parked outside the fire department, and told Officer
McNamee that he had been stabbed in the heart.  (Tr. 220, 241-
42.)  After Officer McNamee radioed that somebody had been
stabbed and requested medical assistance, Booker said he felt
dizzy and sat down on the back of a fire truck.  (Tr. 243.)
Shortly after, Booker laid down on the ground.  (Tr. 244.)
Officer McNamee asked Booker twice who had stabbed him, but
Booker was unable to answer before he lost consciousness.  (Tr.
244-45.)  Booker died and the petitioner was arrested two days
later.  (Tr. 282-86.)

During the trial, the petitioner admitted to stabbing
Booker, but asserted an affirmative defense of justification
based on Booker's alleged conduct leading up to and during the
fight.  (Tr. 460-63, 487, 500, 507-09, 586-87.)

On August 3, 2001, the jury found the petitioner not guilty
of Murder in the Second Degree based on intent or depraved

indifference, but guilty of Manslaughter in the First Degree.
(Tr. 595-96.)  On September 17, 2001, the petitioner was
sentenced as a persistent felony offender to an indeterminate
sentence of twenty-five years to life in prison.  (Sent. Tr.
32.)

B.

The petitioner appealed his conviction to the Appellate
Division, First Department, and argued that the verdict was
against the weight of the evidence.  In an opinion dated May 13,
2003, the Appellate Division unanimously rejected the
petitioner's claims.  People v. Chambers, 758 N.Y.S.2d 799 (App.
Div. 2003).  The court held that "[t]he verdict was based on
legally sufficient evidence and was not against the weight of
evidence."  Id.  It further held that the jury "properly
credited evidence that disproved [the petitioner's]
justification defense beyond a reasonable doubt," in part based
on evidence that the petitioner pursued Booker when Booker was
fleeing.  Id.  The petitioner's application for leave to appeal
to the New York State Court of Appeals was denied on July 11,
2003.  People v. Chambers, 796 N.E.2d 481 (N.Y. 2003).

The petitioner moved in the New York Supreme Court, Bronx
County, to vacate his sentence pursuant to New York Criminal
Procedure Law § 440.20, claiming that his sentence violated
Apprendi because the trial court "unintentionally" adjudicated

6

him a "discretionary" persistent felony offender and that he
received ineffective assistance counsel at the sentencing
proceeding.  (Killian Decl. Ex. 5.)  Although the petitioner did
not elaborate how counsel was ineffective at sentencing, the
state court granted the petitioner's motion to vacate and
ordered a re-sentencing hearing based on trial counsel's silence
throughout the sentencing proceeding and the sentencing court's
failure to make clear at the original proceeding that the
petitioner was being sentenced as a mandatory persistent violent
felony offender rather than a discretionary persistent felony
offender.  (Killian Decl. Ex 12.)

The petitioner also claimed that his sentence as a
persistent violent felony offender should be vacated because he
had not committed two prior violent felony offenses and his
prior convictions were unconstitutional.  (Killian Decl. Ex. 5.)
The state court held an evidentiary hearing to determine if the
petitioner had previously been convicted of the two violent
felony offenses alleged by the prosecutor, and if those
convictions were unconstitutional.  In an order dated March 10,
2006, the state court found that the prosecutor had met his
burden as to both issues.  (Killian Decl. Ex. 14.)  The court
determined that the petitioner should be sentenced forthwith as
a mandatory persistent violent felony offender pursuant to New
York Penal Law § 70.08 and New York Criminal Procedure Law §

7

400.16.  (Id.)  The petitioner was sentenced to an indeterminate
prison term of twenty-five years to life.

　　After the state court issued the March 10, 2006 decision
re-sentencing the petitioner as a persistent violent felony
offender, the petitioner filed pro se papers titled "Quantum of
Proof and Notice of Allegations and Evidence Warranting
Dismissal with Prejudice," in which he raised many of the same
issues regarding the grand jury proceeding and the trial raised
in this petition.  In a supplemental order issued on March 30,
2006, the state court denied all of the petitioner's claims.
(Killian Decl. Ex. 15.)  The court specifically noted that the
petitioner's complaints about his trial "to wit, prosecutorial
misconduct, false testimony, conflicts of interest, abuse of
process, character assassination, double jeopardy, judicial
error, etc.," were "conclusory and insufficient to warrant
either the relief requested or an evidentiary hearing."  (Id. at
2.)  The court also noted that "all of these concerns dealt with
matters of record and could have been raised on direct appeal."
(Id.)

　　While the petitioner's motion to vacate his sentence was
still pending, he moved in the Appellate Division, First
Department, for a writ of error coram nobis, alleging
ineffective assistance of appellate counsel.  (See Killian Decl.
Ex. 16.)  Specifically, the petitioner alleged that his

appellate counsel was ineffective for failing to raise claims of
ineffective assistance of trial counsel, prosecutorial
misconduct, and judicial error.  The petitioner also claimed
ineffective assistance of appellate counsel based on counsel's
alleged failure to advise the petitioner of his option to submit
a supplemental brief to the Appellate Division on direct appeal.
In an order dated December 9, 2004, the Appellate Division,
First Department denied the petitioner's request.  People v.
Chambers, 787 N.Y.S.2d 674 (App. Div. 2004).

Following his re-sentencing, the petitioner filed a second
appeal, through assigned appellate counsel, with the Appellate
Division, First Department.  (Killian Decl. Ex. 18.)  The
petitioner claimed that the prosecution failed to prove beyond a
reasonable doubt that he had at least two prior violent felony
convictions, and that his sentence as a persistent violent
felony offender was unconstitutional under Apprendi and its
progeny.  On November 27, 2007, the court unanimously affirmed
the trial court's judgment and found that the prosecution did
establish beyond a reasonable doubt that the petitioner had
committed two prior violent felonies, and that the procedure
used pursuant to the persistent violent felony offender statute
was not unconstitutional.  People v. Chambers, 846 N.Y.S.2d 151
(App. Div. 2007).  The petitioner's application for leave to

appeal to the New York Court of Appeals was denied on February
28, 2008.  People v. Chambers, 883 N.E.2d 1259 (N.Y. 2008).

     The petitioner also filed a pro se motion to vacate his
judgment of conviction pursuant to New York Criminal Procedure
Law § 440.10, alleging judicial error and misconduct,
prosecutorial misconduct, ineffective assistance of counsel, and
that the grand jury testimony was legally insufficient to
support the indictment.  (Killian Decl. Ex. 22.)  The petitioner
alleged that the trial court erred when it did not dismiss one
of the two Murder in the Second Degree charges because
intentional murder and depraved indifference murder are
inconsistent with one another.  The petitioner further claimed
that the trial court committed judicial misconduct by including
depraved indifference murder in the jury charge, allowing a
witness to be recalled and thus testify twice after observing
the trial, instructing the jury that the petitioner's videotaped
statement which was only referenced at trial was insufficient
evidence of justification, allowing the petitioner to be tried
on charges not contained in the indictment, making "caustic
remarks," failing to allow trial counsel to obtain a copy of the
victim's criminal record for use at trial, and failing to
include the lesser offense of Manslaughter in the Second Degree
in the jury instructions.  In his reply papers, the petitioner
also alleged prosecutorial misconduct because the People omitted

the petitioner's videotaped statement from the grand jury
proceedings and the trial allegedly violating their Brady
obligations, allegedly assassinated the petitioner's character
when he was on the stand, allowed a witness to offer false
testimony and inserted its own views about the petitioner's
guilt, made an inflammatory remark, and forced witnesses to
testify.  The petitioner claimed ineffective assistance of
counsel alleging that trial counsel failed to urge the trial
court to dismiss the depraved indifference murder count and that
trial counsel failed to exercise the petitioner's right to be
present at all sidebar discussions.

In an order dated July 3, 2008, the court denied the
petitioner's motion to vacate his conviction.  (Killian Decl.
Ex. 26.)  Citing New York Criminal Procedure Law § 440.10(2)(c),
the court ruled that "all of the [the petitioner's] arguments
here (including Antommarchi-style [sidebar] issues) relate to
matters of record – and, therefore, if not previously raised and
already determined could have – with due diligence on [the
petitioner's] part – been so raised, either on direct appeal or
on a prior CPL 330 motion.  Therefore, there is no basis for
consideration and/or reconsideration at this time." (Id.)  The
court also noted that it was unnecessary to evaluate the
petitioner's claims regarding the inclusion of depraved
indifference and intentional Murder in the Second Degree in the

11

indictment and jury charge because the petitioner was acquitted
of both charges, so any concern regarding the charges would be
"wholly academic." (Id.)

The petitioner sought leave to appeal from that order, and
on October 23, 2008, petitioner's application was denied.
(Killian Decl. Ex. 27.)

II.

Pursuant to the Antiterrorism and Effective Death Penalty
Act of 1996 ("AEDPA"), a federal court may grant habeas corpus
relief to a state prisoner on a claim that was adjudicated on
the merits in state court only if it concludes that the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. §
2254(d)(1)-(2); see also Hawkins v. Costello, 460 F.3d 238, 242
(2d Cir. 2006); Muir v. New York, No. 07 Civ. 7573, 2010 WL
2144250, at *3 (S.D.N.Y. May 26, 2010).

A state court decision is contrary to clearly established
Federal law "if the state court arrives at a conclusion opposite
to that reached by [the Supreme Court] on a question of law" or
"if the state court confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and

12

arrives at a result opposite to" the Supreme Court's result.
Williams v. Taylor, 529 U.S. 362, 405 (2000); see also Jones v.
Walsh, No. 06 Civ. 225, 2007 WL 4563443, at *4 (S.D.N.Y. Dec.
27, 2007).

A state court decision involves "an unreasonable
application of . . . clearly established Federal law" when the
state court "correctly identifies the governing legal rule but
applies it unreasonably to the facts of a particular prisoner's
case . . . ." Jones, 2007 WL 4563443, at *5 (quoting Williams,
529 U.S. at 407-08.) To meet that standard, "the state court
decision [must] be more than incorrect or erroneous . . . [it]
must be objectively unreasonable." Jones, 2007 WL 4563443, at
*5 (quoting Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). "[I]t
is well established in [this] circuit that the objectively
unreasonable standard of § 2254(d)(1) means that [a] petitioner
must identify some increment of incorrectness beyond error in
order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217,
248 (2d Cir. 2003) (internal quotation marks omitted); see also
Jones, 2007 WL 4563443, at *5.

Because the petitioner is proceeding pro se, his petition
is "read liberally and should be interpreted 'to raise the
strongest arguments that [it] suggest [s].'" Graham v.
Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v.

13

Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Muir, 2010
WL 2144250, at *4.

                               III.

     The petitioner raised his claims of prosecutorial
misconduct and judicial misconduct, the claim that the grand
jury proceeding was insufficient to support the indictment, and
the ineffective assistance of counsel claim based on trial
counsel's failure to assert the petitioner's right to be present
at sidebar discussions in his § 440.10 motion to vacate.  All of
these claims were rejected on procedural grounds because they
should have been raised on direct appeal.  Therefore, the
various claims of prosecutorial and judicial misconduct and
error, the claim that the indictment was defective, and the
claim of ineffective assistance of counsel relating to sidebar
discussions should be dismissed as procedurally barred because
the state court's rejection of these claims pursuant to New York
Criminal Procedure Law § 440.10 is an independent and adequate
state law ground prohibiting review.  See Colon v. New York, No.
08 Civ. 0170, 2009 WL 1116478, at *2 (S.D.N.Y. Apr. 27, 2009)
("[E]ven when a petitioner presents a colorable federal
constitutional claim, federal habeas review is barred if the
claim was denied by a state court on a state procedural ground
that is both 'independent' of the merits of the federal claim
and an 'adequate' basis for the court's decision.") (quoting

                               14

Harris v. Reed, 489 U.S. 225, 260-61 (1989)); see also Muir,
2010 WL 2144250, at *6.[1]

It is well settled that where "a state prisoner has
defaulted his federal claims in state court pursuant to an
independent and adequate state procedural rule, federal habeas
review of the claims is barred unless the prisoner can
demonstrate cause for the default and actual prejudice as a
result of the alleged violation of federal law, or demonstrate
that failure to consider the claims will result in a fundamental
miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750
(1991); see also Lee v. Kemma, 534 U.S. 362, 375 (2002); Cotto
v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003); Muir, 2010 WL
2144250, at *6.

In this case, the state court explicitly relied on an
independent state procedural ground in rejecting the
petitioner's claims.  Indeed, the Court of Appeals for the
Second Circuit has found that the failure to raise a claim on
direct appeal that appeared on the face of the record is a
procedural bar under New York law and, therefore, constitutes an
independent and adequate state ground for the rejection of the

---

[1] New York Criminal Procedure Law § 440.10(2)(c) provides in relevant part
that "the court must deny a motion to vacate a judgment when . . . [a]lthough
sufficient facts appear on the record of the proceedings underlying the
judgment to have permitted, upon appeal from such judgment, adequate review
of the ground or issue raised upon the motion, no such appellate review or
determination occurred owing to the defendant's unjustifiable failure to take
or perfect an appeal during the prescribed period or to his unjustifiable
failure to raise such ground or issue upon an appeal actually perfected by
him."

petitioner's claim.  See Levine v. Comm'r of Corr. Servs., 44
F.3d 121, 126 (2d Cir. 1995).[2]  Accordingly, for this Court to
grant habeas relief on a defaulted claim, the petitioner must
demonstrate either (1) cause for and prejudice from the default,
or (2) that a fundamental miscarriage of justice will result if
this Court fails to hear the federal claim.  See Colon, 2009 WL
1116478, at *3 (collecting cases); see also Muir, 2010 WL
2144250, at *6.

     The petitioner can demonstrate cause only if he "can show
that some objective failure external to the defense impeded
counsel's efforts to comply with the State's procedural rule."
Murray v. Carrier, 477 U.S. 478, 488 (1986).  This cause "must
be something external to the petitioner, something that cannot
fairly be attributed to him."  Coleman, 501 U.S. at 753.  While
examples of such cause do include attorney error, "[a]ttorney
error short of ineffective assistance of counsel does not
constitute cause for a procedural default."  Murray, 477, U.S.
at 492; see also Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir.
2001).  To complete the cause and prejudice test, the petitioner

---

[2] In its July 3, 2008 decision, the state court also pointed out that the
court had previously rejected the petitioner's various claims in a decision
and order dated March 30, 2006 (Killian Decl. Ex. 15.), in which the court
found as follows: "[a]s for defendant's numerous complaints regarding the
trial (to wit, prosecutorial misconduct, false testimony, conflicts of
interest, abuse of process, character assassination, double jeopardy,
judicial error, etc.) the court finds defendant's  allegations to be
conclusory and insufficient to warrant either the relief requested or an
evidentiary hearing thereof.  In addition, all of these concerns dealt with
matters of record and could have been raised on direct appeal."  The prior
rejection was thus also based on an independent and adequate state ground.

must also establish that the ineffective assistance of counsel caused him actual prejudice. To establish actual prejudice, a petitioner must show that the constitutional violation alleged "worked to his *actual* and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982); see also Muir, 2010 2144250, at *7.

The petitioner has failed to establish either cause or actual prejudice to excuse his failure to comply with the state procedural rule.  The petitioner alleges that his failure to comply with the state procedural rule was the result of ineffective assistance of appellate counsel.  The petitioner claims that appellate counsel unreasonably failed to assert the defaulted claims on direct appeal.  The petitioner has submitted a letter that he received from appellate counsel advising him that there was insufficient record evidence to support some claims and advising that raising the reasonable doubt claim alone would have the best chance of success.  (Letter attached to the Petitioner's Reply.)  However, this does not establish cause because the petitioner has not demonstrated that his ineffective assistance of appellate counsel claim is potentially meritorious.  To establish a claim of ineffective assistance of counsel, the petitioner must show both that (1) his counsel's performance was deficient in that it was objectively

17

unreasonable under professional standards prevailing at the
time, and (2) his counsel's deficient performance was
prejudicial to his case.  See Strickland v. Washington, 466 U.S.
668, 687 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir.
1995); see also  Redd v. Woughter, No. 09 Civ. 9819, 2010 WL
4983169, at *1 (S.D.N.Y. Dec. 3, 2010).

     To meet the first prong of the Strickland test, the
petitioner must establish that his appellate counsel "made
errors so serious that counsel was not functioning as the
'counsel' guaranteed . . . by the Sixth Amendment." Strickland,
466 U.S. at 687.  There is a "strong presumption" that appellate
counsel's conduct fell within the broad spectrum of reasonable
professional assistance, and a petitioner "bears the burden of
proving that counsel's representation was unreasonable under
prevailing professional norms and that the challenged action was
not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381
(1986) (citing Strickland, 466 U.S. at 688-89).  Appellate
counsel is not obligated to "raise every nonfrivolous issue that
the defendant requests." Jameson v. Coughlin, 22 F.3d 427, 429
(2d Cir. 1994) (quoting Jones v. Barnes, 463 U.S. 745, 754 n.7
(1983)).  Instead, the petitioner must demonstrate that
appellate counsel "omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker."

Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; see also Redd, 2010 WL 4983169, at *2.

Appellate counsel did not commit serious error that prejudiced the petitioner by failing to raise these claims because, as discussed in detail below, each of them is without merit.  Because the petitioner's ineffective assistance of counsel claim is without merit, he cannot establish cause for failing to comply with the state procedural bar.  In addition, the petitioner cannot demonstrate any actual prejudice.  All of the petitioner's claims that were previously dismissed on state procedural grounds are without merit.

A.

The petitioner alleges three grounds based on alleged prosecutorial misconduct relating to the petitioner's videotaped statement that were previously raised in state court.  The petitioner claims that the People violated their Brady obligations by suppressing the video, the prosecutor acted as an

unsworn witness when he objected to the defense counsel's
reference to the videotaped statement, and the prosecutor
improperly sought to preclude questioning related to the
videotaped statement.

1.

Under Brady v. Maryland, 373 U.S. 83 (1963), "the
suppression by the prosecution of evidence favorable to an
accused upon request violates due process where the evidence is
material either to guilt or to punishment, irrespective of the
good faith or bad faith of the prosecution." Id. at 87. The
Brady rule applies to both exculpatory and impeachment evidence.
See Giglio v. United States, 405 U.S. 150, 154-55 (1972); United
States v. Payne, 63 F.3d 1200, 1210 (2d. Cir. 1995). To
establish a Brady violation, the petitioner must show (1) that
the evidence at issue is favorable to the accused, either
because it is exculpatory or impeaching; (2) that the government
suppressed the evidence, either willfully or inadvertently and
(3) that prejudice ensued. See Strickler v. Greene, 527 U.S.
263, 281-82 (1999). Evidence is material "if there is a
reasonable probability that, had the evidence been disclosed to
the defense, the result of the proceeding would have been
different." United States v. Orena, 145 F.3d 551, 557 (2d Cir.
1998) (quoting Kyles v. Whitley, 514 U.S. 419, 433 (1995)); see

also <u>Chacko v. United States</u>, No. 00 Civ. 405, 2000 WL 1808662, at *4 (S.D.N.Y. Dec. 11, 2000).

In this case, the petitioner admits that he and his trial attorney were aware of the existence of his videotaped statement.  In addition, the record demonstrates that the petitioner was well aware of his videotaped statement, which was the subject of a pre-trial hearing as well as a motion <u>in limine</u>.  Therefore, the petitioner cannot establish that only the state knew of the video and suppressed it, as is required to demonstrate a <u>Brady</u> violation, and the claim is without merit.

2.

The prosecutor did not act as an unsworn witness when he objected to trial counsel's reference to the videotape during summation.  At no point did the prosecutor assert his opinion. He merely stated that there was "no evidence" that the petitioner gave a videotaped statement to the police. (Tr. 501.) Although the court overruled the objection, stating that "[t]he jury remembers the evidence," the prosecutor's objection was not baseless, because the videotaped statement was not in evidence. The petitioner's claim that the prosecutor acted as an unsworn witness is without merit.

3.

The petitioner also argues that the prosecutor acted improperly by moving <u>in limine</u> for the trial court to preclude

21

questioning about the petitioner's videotaped statement, and
that the trial court acted improperly in granting the
prosecutor's motion.  This argument is not a basis for habeas
relief.  State court decisions on the admissibility of evidence
are governed by state law, and the Supreme Court has instructed
that federal habeas courts should not reexamine state court
determinations on state law questions.  See Estelle v. McGuire,
502 U.S. 62, 67-68 (1991).  In addition, federal habeas claims
based on erroneous evidentiary rulings can only succeed if the
petitioner can show that the improperly excluded evidence would
have created "a reasonable doubt that did not otherwise exist."
United States v. Agurs, 427 U.S. 97, 112 (1976).  In this case,
the trial court excluded questioning about a purely self-serving
statement made by the petitioner, when the videotaped statement
itself was not being offered as evidence by either party.  There
is no basis to believe that such an exclusion violated any
constitutional right.  There is also no reason to believe that
such a self-serving statement would have carried sufficient
weight against testimony from multiple eye-witnesses when the
petitioner had the opportunity in his testimony to repeat
anything he thought relevant from his videotaped statement.  The
claims of prosecutorial misconduct and judicial error regarding
suppression of questioning relating to the petitioner's
videotaped statement are without merit.

B.

The petitioner's remaining claims of prosecutorial misconduct and judicial error relate to witnesses at trial.

1.

First, the petitioner alleges judicial error based on the trial court's allowing a witness to be recalled when that witness had allegedly been present in the courtroom during previous testimony.  In addition, the petitioner claims that his right to cross-examine this witness was violated.  However, the witness's testimony consisted of answers to only three questions and there is no evidence that the witness's testimony was influenced in any way by the testimony of any other witness. The petitioner's trial counsel cross-examined the witness and there is no evidence that cross-examination was limited or inhibited in any way.  (See Tr. 479-80.)  The petitioner has failed to show that he was deprived of any constitutional right and it is clear from the record that the petitioner had the opportunity to cross-examine the witness.  The petitioner's claims are without merit.

2.

Next the petitioner asserts that the prosecutor threatened, harassed, and forced two witnesses to appear for the state.  The

state compelled two witnesses, Raphael Vasquez and Kamal
Johnson, to testify with material witness orders pursuant to New
York Criminal Procedure Law § 620.20.  (See Tr. 305, 325, 356,
531.)  Such orders were appropriate in this case because neither
witness would have been amenable or responsive to a subpoena.
See N.Y. Crim. P. L. § 620.20; Tr. 305, 325, 356.  Neither
witness indicated that he had been threatened to appear in court
beyond the material witness orders which were properly issued.
(See Tr. 304-337, 357-60.)  Because the witnesses were properly
compelled to appear in court pursuant to § 620.20 and there is
no evidence of improper coercion or threats, this claim is
meritless.

                                3.

     The petitioner also claims that the prosecutor made an
improper comment in summation, stating "you do what you got to
do" in response to defense counsel's comments about Vasquez and
Johnson being "forced" to testify.  The prosecutor's remark
warrants habeas relief only if it "so infected the trial with
unfairness as to make the resulting conviction a denial of due
process."  Darden v. Wainwright, 477 U.S. 168, 181 (1986)
(quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).
Because the statement was made during summation, the Court must
view it in the context of the entire trial and any remarks made
by defense counsel when determining whether it amounted to

                                24

prejudicial error.  <u>United States v. Young</u>, 470 U.S. 1, 12

(1985); <u>see also</u> <u>United States v. Thomas</u>, 377 F.3d 232, 244 (2d

Cir. 2004).  The statement in this case did not deny the

petitioner a fair trial.  The prosecutor made the statement in

response to defense counsel's comments in summation and the

statement only addressed the prosecutor's conduct in securing

Vasquez and Johnson as witnesses for the state.  Because the

statement was only made in response to contentions made by

defense counsel in his summation and was limited in scope and

affect, it did not deprive the petitioner of due process at

trial.  <u>See, e.g.</u>, <u>United States v. Burden</u>, 600 F.3d 204, 221-22

(2d Cir. 2010); <u>United States v. Myerson</u>, 18 F.3d 153, 163 (2d

Cir. 1994).  As a result, any claims based on this statement are

without merit.

4.

Finally, the petitioner alleges that the prosecutor acted

improperly when cross-examining the petitioner.  The petitioner

asserts that his character was "assassinated" when the

prosecutor questioned him about his commission of prior crimes.

The prosecutor's questioning about the petitioner's prior crimes

was limited and did not reveal the particular crimes of which

the petitioner had been convicted.  (Tr. 421-26.)  The

prosecutor confirmed the petitioner's prior testimony that he

had committed four felonies and several misdemeanors without

25

ever eliciting the nature of the crimes.  (Id.)  In addition, the petitioner's responses to the prosecutor's questions downplayed the petitioner's culpability in the crimes by suggesting they were the result of youthful indiscretions. (Id.)  Because the questioning about prior crimes did not result in any fundamental unfairness at trial, the petitioner has failed to show that he was deprived of any constitutional right. See, e.g., Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) ("erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner can show that the error deprived him of a fundamentally fair trial." (internal quotation marks, citations, and emphasis omitted)); Warren v. Miller, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000) (questioning about prior crimes for purposes of impeachment did not result in any fundamental unfairness.)

C.

The petitioner also claims that he did not receive effective assistance of counsel because his trial counsel failed to assert his right to be present at all sidebar conferences. The petitioner had a constitutional right to be present at "any stage of the criminal proceeding that [was] critical to its outcome if [the petitioner's] presence would [have] contribut[ed] to the fairness of the procedure."  United States v. Tureseo, 566 F.3d 77, 83 (2d Cir. 2009) (quoting Kentucky v.

26

Stincer, 482 U.S. 730, 745 (1987); see also Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002). The petitioner has offered no evidence as to how his absence from the sidebars affected the fairness of the proceedings or his opportunity to defend himself. Thus, to the extent defense counsel failed to inform the petitioner of his right to be present, there is no evidence that the petitioner suffered any prejudice from his absence at the sidebar conferences. As a result, the petitioner has not established a claim for ineffective assistance of counsel under the standard set out in Strickland, 466 U.S. at 686. The petitioner's ineffective assistance of counsel claim is without merit.

D.

The petitioner's last claim that was dismissed pursuant to New York Criminal Procedure Law §440.10(2)(c) is that the grand jury proceeding was defective and that the indictment improperly charged the petitioner with both depraved indifference and intentional murder. Because the petitioner was acquitted of both counts of Murder in the Second Degree, any argument that they should not have been included in the indictment is moot. In addition, the petitioner's claim relating to alleged errors in grand jury proceeding is not cognizable in this case because the petitioner was convicted by a jury after a trial. See Lopez v. Riley, 865 F.2d 30, 32 (2d Cir. 1989).

27

Because each of the claims the petitioner raised in his section 440.10 motion are without merit, no prejudice results from denying the claims as procedurally barred.  Nor does the second exception to the independent and adequate state grounds doctrine provide any basis for relief.  This is not "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," and that would constitute a "fundamental miscarriage of justice" and therefore excuse the petitioner's failure to meet the requirements of New York's preservation policy. Murray, 477 U.S. at 495-96; see also Muir, 2010 WL 2144250, at *8.  There is no reason to conclude that the petitioner is actually innocent, and therefore denying his claims as procedurally barred will not result in a fundamental miscarriage of justice.

Accordingly, the petitioner's claims discussed above, alleging judicial and prosecutorial misconduct, judicial error, ineffective assistance of counsel, and a defective grand jury proceeding are denied because the state court's rejection of them rests on an independent and adequate state ground, the exceptions to that doctrine do not apply, and the claims are, in any event, without merit.

IV.

The petitioner's remaining claims are either moot or
without merit.

A.

The petitioner claims that he was "overreached" numerous
times, and that his videotaped statement, which he alleges
constituted trial evidence, was never published to the jury
because the People or the clerk of the court lost the videotape.
The petitioner raises these claims for the first time in the
petition before this Court.  As a result, they are unexhausted
and procedurally barred. See Jones v. Marshall, No. 08 Civ.
5793, 2011 WL 9386, at *11-*12 (S.D.N.Y. Jan. 3, 2011).  In any
case, they are without merit, and the claims may be dismissed on
the merits.  See 28 U.S.C. § 2254(b)(2).

The petitioner alleges that the videotaped statement was
introduced as trial evidence through the testimony of Detective
Machicote.  However, Detective Machicote did not testify at
trial; rather, he testified at a pre-trial hearing held on May
31, 2001.  (People v. Chambers, May 31, 2001, Docket No. 26 at
3-33.)  The pre-trial hearing was a separate proceeding from the
trial and the trial jury never heard any of Detective
Machicote's testimony.  Therefore, the detective's testimony

29

regarding the videotaped statement could not possibly introduce the videotape as evidence at trial.  Indeed, there is no evidence on the record that the videotape of the petitioner's statement was introduced at trial.  Moreover, the petitioner does not explain how his lawyer could have introduced the petitioner's prior statement at trial.  Because the videotape was never introduced at trial, and there is no basis to believe it would have been admissible, any loss of the videotape by the prosecutor or the clerk of the court was harmless for purposes of publishing trial evidence to the jury.  The petitioner does not elaborate on how the People "overreached."  The petitioner has failed to establish that he was deprived of any constitutional right.

B.

The petitioner also claims that his trial counsel failed to provide effective assistance when he remained silent at the petitioner's first sentencing and failed to argue that the petitioner's sentence as a discretionary persistent violent felony offender was unconstitutional.  This claim is denied as moot because the petitioner's original sentence was vacated, and the petitioner is now incarcerated pursuant to a subsequent sentence as a persistent violent felony offender.

C.

30

The petitioner's final claim is that his sentence as a persistent violent felony offender is unconstitutional under Apprendi because his maximum sentence was increased by findings made by a trial court, specifically that he had committed two prior violent felonies, rather than a jury. This claim is without merit.

The petitioner's suggestion that his adjudication as a persistent violent felony offender violated Apprendi is not tenable, because the Apprendi Court explicitly omitted the fact of a prior conviction from the category of facts that must be determined by a jury. Apprendi, 530 U.S. at 490; see also United States v. Santiago, 268 F.3d 151, 154-55 (2d Cir. 2001) (a federal statute that permits a trial court to enhance a defendant's sentence for possession of a firearm after finding that the defendant had three previous convictions for certain offenses committed on different occasions does not violate Apprendi). The persistent violent felony offender statute pursuant to which the petitioner was sentenced requires an indeterminate sentence with a maximum term of life and a minimum term specified in the statute to be imposed whenever the court finds that a defendant convicted of a violent felony offense was previously convicted of two or more predicate violent felony offenses. See N.Y. Penal Law § 70.08. This sentence enhancement depends only upon a finding that the defendant had

31

certain prior felony convictions, which is precisely the kind of fact Apprendi and its progeny have explicitly omitted from their requirement that the jury determine facts that would result in a sentence greater than the prescribed statutory maximum.  See, e.g., Cunningham v. California, 549 U.S. 270, 282 (2007); Blakely v. Washington, 542 U.S. 296, 301 (2004); Apprendi, 530 U.S. at 490.  The state court's denial of the petitioner's challenge to his sentence under the persistent violent felony offender statute therefore was neither contrary to nor an unreasonable application of the rules set out in the Apprendi line of cases.  See Wicks v. Miller, No. 05 Civ 5341, 2007 WL 1434992, at *8 (S.D.N.Y. May 15, 2007).[3]

Because all of the petitioner's claims are dismissed as procedurally barred, moot, or without merit, and the petitioner has made no showing that an evidentiary hearing could affect the disposition of any of the claims, the petitioner's request for an evidentiary hearing is denied.  See, e.g., Ferrell v. United States, No. 08 Civ. 8245, 2011 WL 1496339, at *4 (S.D.N.Y. Apr. 20, 2011); Eley v. Ercole, No. 08 Civ. 917, 2010 WL 2695522, at *8 (E.D.N.Y. May 6, 2010) (evidentiary hearing is not necessary when "material facts are not in dispute and nothing adduced at the hearing would bear on how this petition should be decided").

---

[3] The Court of Appeals for the Second Circuit has also held that New York's persistent felony offender statute, N.Y. Penal Law § 70.10, does not violate Apprendi and its progeny.  Portalatin v. Graham, 624 F.3d 69, 93-94 (2d Cir. 2010) (en banc).

CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent they are not dealt with above, they are either moot or without merit. For the reasons explained above, the petitioner's motion to vacate or set aside his conviction and sentence pursuant to 28 U.S.C. § 2254 is **denied**. The petition is therefore dismissed. The clerk is directed to enter judgment dismissing the petition, closing this case, and closing all pending motions. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. §2253(c).

**SO ORDERED.**

**Dated:**     **New York, New York**
          **June 7 , 2011**

                                        John G. Koeltl
                                  United States District Judge

33